No. 990 November 19, 2025 75

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S. J. G. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. L. S.,
*Appellant.*

Baker County Circuit Court
21JU03069; A187351

Matthew B. Shirtcliff, Judge.

Submitted September 26, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Mother appeals from a permanency judgment changing her son's permanency plan from "durable guardianship" to "permanent guardianship" at the request of the Oregon Department of Human Services (ODHS). Mother argues that the juvenile court "lacked authority to order [S]'s permanency plan as 'permanent guardianship' and thereby direct the parties to participate in a particular *type* of guardianship for him." Because we have previously determined that the designation of a specific type of guardianship in a permanency judgment does not determine the type of guardianship that will ultimately be pursued or granted, *Dept. of Human Services v. M. J. H.*, 343 Or App 579, 581 n 2, ___ P3d ___ (2025), we conclude that any error was harmless and affirm.

The juvenile court exercised jurisdiction over seven-year-old S three years before the permanency hearing at issue and committed him to the care of ODHS. That court had previously changed the plan away from reunification to "durable guardianship."[1] Here, mother's argument rests on the presumption that changing the reference from a "durable" to a "permanent" guardianship had a legal effect that it simply did not have. Here, the court did not *direct* ODHS to file a permanent guardianship but, instead, simply granted ODHS's request to change the type of guardianship *referenced* in the permanency plan.

Mother acknowledges that the parties can petition for a permanent guardianship, even without the permanency judgment formally designating a plan of guardianship, once jurisdiction and wardship have been established over a child. ORS 419B.365(1). And the permanency judgment at issue did not effectively grant a permanent guardianship,

---

[1] It is clear from the record that, by referring to a "durable guardianship," the court was referring to a guardianship pursuant to ORS 419B.366. There is a history of confusion about what to call these guardianships. *See Dept. of Human Services v. S. M.*, 355 Or 241, 248, 323 P3d 947 (2014) ("ORS chapter 419B identifies at least two long-term legal guardianships that may be appropriate in lieu of terminating parental rights."); *Dept. of Human Services v. A. D. J.*, 300 Or App 427, 435, 453 P3d 619 (2019) (calling guardianships pursuant to ORS 419B.266 "'durable' or general guardianships"). ORS 419B.366 guardianships have most recently been referred to by the Oregon Supreme Court as "general guardianships." *Dept of Human Services v. J. C.*, 365 Or 223, 226, 444 P3d 1098 (2019).

because the court must make specific findings in order to grant a guardianship under either of the possible legal guardianship plans in the juvenile code.[2] ORS 419B.476 requires the court to direct the agency to refer the ward— presumably to ODHS personnel responsible for evaluating the needs of the ward and how the ward will be served by each possible guardianship form; and their attorney, the Department of Justice; which must evaluate the grounds that can be proven in a given case.[3] ODHS and DOJ make a joint decision about which petition to file given the ward's needs and the strength of the case. The qualifying findings in each type of guardianship must be made by the juvenile court at the time of establishment of the guardianship.

---

[2] ORS 419B.365, in relevant part, requires a court to make the following findings before it can grant a permanent guardianship:

"(4) The court shall grant a permanent guardianship if it finds by clear and convincing evidence that:

"(a) The grounds cited in the petition are true; and

"(b) It is in the best interest of the ward that the parent never have physical custody of the ward but that other parental rights and duties should not be terminated."

By contrast, ORS 419B.366, in relevant part, requires the court to make the following findings to grant a general guardianship:

"(6) If the court has approved a plan of guardianship under ORS 419B.476, the court may grant the motion for guardianship if the court determines, after a hearing, that:

"(a) The ward cannot safely return to a parent within a reasonable time;

"(b) Adoption is not an appropriate plan for the ward;

"(c) The proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian; and

"(d) Guardianship is in the ward's best interests. In determining whether guardianship is in the ward's best interests, the court shall consider the ward's wishes."

There is a potential third type of legal guardianship plan a juvenile court can order as a permanency plan, a "community guardianship" plan under ORS 419B.371 for wards 16 or over, which requires different findings and is not applicable here.

[3] As the parties acknowledge, ORS 419B.365 permanent guardianships are more difficult to prove and are considered more stable for the child because they are more difficult to vacate. For a discussion of the differences between the two types of guardianships see *S. M.*, 355 Or at 247-48, 248 n 3. Mother's argument at trial was that a decision to refer for permanent guardianship would "forever close the door to both of [ward's] parents." On appeal, she argues that under a general guardianship, "a party (including a parent) may move to dismiss dependency jurisdiction, and if meritorious, end the general guardianship." A parent may not move to vacate a permanent guardianship under ORS 419B.368(7).

The effect of a court's designation of a preferred guardianship type at the permanency stage is not directive, but advisory. More typically, when we have seen juvenile courts designate the type of guardianship at a permanency hearing, the court has designated a guardianship type upon the initial plan change away from reunification. *See, e.g.*, *M. J. H.*, 343 Or App at 581, 581 n 2. It is relevant for ODHS and DOJ decisionmakers to consider as planning continues for each family, because the court must ultimately approve any legal guardianship. The juvenile code contemplates that ODHS and the juvenile court work together to ensure that dependent wards have their needs met. *See* ORS 419B.343(1) ("To ensure effective planning for wards, [ODHS] shall take into consideration recommendations and information provided by the committing court before placement in any facility."). And, ultimately, the juvenile court must approve the guardianship filed under ORS 419B.365 or 419B.366 and determine that the course of action specified in any guardianship petition a party files is in the best interest of the ward before a guardianship is established. Thus, the juvenile court has authority to weigh in on the type of guardianship that seems likely to meet the child's needs. So, on the one hand, a recommendation at the permanency stage, understood by all parties as such, is helpful to ensure "effective planning for wards."[4] ORS 419B.343(1).

On the other hand, juvenile courts should consider the ramifications of appearing to foreclose or eliminate potential options for a child at the permanency hearing. ORS 419B.476(5)(b)(C) only requires the court to select "legal guardianship" at the permanency hearing if it determines that any guardianship form of supervision and care will meet the child's needs. A determination of whether the parent should never regain custody of the child at that stage could be premature, and circumstances may change by the time a petition or motion for guardianship is filed and litigated. A guardianship resource may not be identified or may

---

[4] Being too specific in the permanency judgment can cause the need for extra permanency hearings, as the facts in this case illustrate. By designating "durable guardianship" in the initial plan change permanency judgment, ODHS argued it was compelled to get court approval before filing a permanent guardianship petition. Juvenile courts should consider whether to avoid situations like the one in this case by opting for "guardianship" only.

not have consented to the legal form a guardianship may take at this early stage. Finally, best interest findings must be made at the time of establishment of the guardianship.

In sum, ODHS is not bound by the court's identification of a type of guardianship plan at a permanency hearing, but it must determine what it can prove and whether any additional stability provided by a permanent guardianship is necessary and achievable by evaluating the available evidence, potential guardianship resources, and family situation. The juvenile court is not without authority to comment on its view of the best way to provide an "alternative, safe and permanent home for the child," as is Oregon's obligation under our juvenile system if the child cannot safely return to parents. ORS 419B.090(5). It is unnecessary to assign error to or preserve an argument that, at the permanency stage, the court recommended the "wrong" type of guardianship.

Ultimately, here, we agree with ODHS that if designation by the juvenile court of permanent guardianship was error, it was harmless error because such designation in the permanency judgment does not control or foreclose any type of petition or motion ultimately filed by a party, and because any party could have filed for a permanent guardianship at any time after jurisdiction was exercised and wardship was established. We affirm.

Affirmed.